UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
TYRONE HOUSTON, a/k/a TYRONE BLACK,                          :
                                                             :
                        Plaintiff,                           :     OPINION & ORDER
                                                             :
        -against-                                            :     11 Civ. 7374 (HB)
                                                             :
DORA B. SCHRIRO, ET AL.,                                     :
                                                             :
                        Defendants.                          :
                                                             :
-------------------------------------------------------------X

**HAROLD BAER, JR., United States District Judge:**

*Pro se* plaintiff Tyrone Houston brings this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 asserting violations of his constitutional rights while he was imprisoned at the Anna M. Kross Center ("AMKC"), the George R. Vierno Center, and the Manhattan Detention Complex ("MDC"). The New York City Department of Correction ("NYCDOC") operates all three facilities. Defendants, with the exception of Oscar Etuk (collectively, the "City Defendants"), move under Rule 12(b)(6) to dismiss the second amended complaint ("SAC"). Etuk, an MDC podiatrist, moves separately to dismiss the claims against him. For the reasons that follow, the City Defendants' motion is GRANTED in part and DENIED in part. Etuk's motion is also GRANTED in part and DENIED in part.

                                    BACKGROUND

In his first opposition to these motions, Plaintiff submitted three affidavits containing new allegations as well as additional exhibits supporting his claims. These materials are reflected on the court's docket at ECF entry number 55 ("NYC Opp."), number 56 ("Houston Aff."), and number 63 ("Etuk Opp."). While generally "a party is not entitled to amend its complaint through statements made in motion papers," *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (citing *IIT v. Cornfeld*, 619 F.2d 909, 914 & n.6 (2d Cir. 1980), abrogated on other grounds by *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010)), courts also must read *pro se* plaintiffs' papers liberally. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006). In light of this requirement, I will consider the factual allegations in Plaintiff's opposition papers as supplementing the SAC. *See, e.g., Collins v.*

1

*Goord*, 438 F. Supp. 2d 399, 403 n.1 (S.D.N.Y. 2006) (considering new factual allegations contained in *pro se* plaintiff's opposition papers on a motion to dismiss). But on April 16, 2013, I rejected Plaintiff's second set of opposition papers as improperly filed. Therefore I do not consider those papers here. The facts as alleged in the SAC and Plaintiff's first opposition are set forth below.

## A. Dental Care

On August 27, 2009, Plaintiff first told an unnamed prison doctor that he had multiple cavities and tooth pain. (SAC ¶ 13.) That doctor gave Plaintiff painkillers and referred him to a dentist. (*Id.*) Brian Martin, an MDC dentist, examined Plaintiff several months later. At that time, Plaintiff still had "numerous cavities" and "hole[s] in [his] teeth." (*Id.* ¶ 14.) This condition prevented him from chewing food. Plaintiff "be[g]ged" Martin to provide immediate treatment but Martin refused. (*Id.*) Instead, Martin recommended that Plaintiff see an oral surgeon outside the prison. (*Id.*) At "weekly inmate counselor meetings," Plaintiff complained to MDC Warden Rose Agro and Deputy Warden Artemio Colon about his "extreme pain [and] teeth deteriorat[ion]." (NYC Opp. ¶ 6.) Nevertheless, Plaintiff never received treatment for his dental condition while in NYCDOC custody. (*Id.*) After his transfer to state custody, dentists with the New York State Department of Corrections and Community Supervision ("NYSDOCCS") examined Plaintiff in July 2012 and found that he needed five teeth extracted. (*Id.* Ex. B.) Plaintiff alleges that his previous insufficient dental care led to these extractions.

## B. Foot Care

Next, Plaintiff's foot problems began when his prison-issued footwear caused gout, swelling, bunions, and painful corns. (SAC ¶ 20.) An MDC podiatrist examined Plaintiff on May 3, 2010. Like Martin, this podiatrist recommended that Plaintiff see a podiatrist outside the prison. (*Id.* ¶ 21.) The next day, a physician's assistant issued a pass to Colon and MDC Security Captain Dauna Webb permitting Plaintiff to wear work boots. (*Id.* ¶ 22.) But Curt Walker, an MDC physician, altered Plaintiff's medical records on May 5, 2010 to state that Plaintiff did not need to see an outside podiatrist. (*Id.* ¶ 23.) According to Plaintiff, Walker's actions were part of a conspiracy with MDC Inmate Grievance Program Supervisor Sean Brown, Webb, and Colon to retaliate for a lawsuit Plaintiff brought in 2009 and his administrative grievances. (*Id.*) Plaintiff also alleges that during weekly inmate counselor meetings, he requested work boots from Webb, Colon, and Agro. Because Plaintiff was not provided work

boots or orthopedic shoes, he experienced difficulty walking and standing.  And Plaintiff's gout, existing arthritis, and bunion pain worsened.  (*Id.* ¶ 55; NYC Opp. ¶ 9.)  Because he had no work boots, for months he was forced to wear shower slippers at court appearances, including during cold, snowy weather.  (SAC ¶ 26.)  Plaintiff now requires foot surgery.  (NYC Opp. ¶ 9.)  According to Plaintiff, he would not need that surgery if he had been given work boots while in NYCDOC custody.  (*Id.*)

Then, on June 20, 2011, Etuk examined Plaintiff's foot.  Plaintiff alleges Etuk not only "cut[] him" with a "dirty and infect[ed] knife" but also "left half of an ingrown toenail" inside Plaintiff's "[b]ig [r]ight [t]oe."  (SAC ¶ 28.)  On August 22, 2011, another doctor treated Plaintiff for this "infected ingrown toe nail."  (*Id.* ¶ 29.)  According to Plaintiff, he required this additional treatment because of "Etuk's deliberate and inhumane indifference[]."  (*Id.*)  And Etuk also did not treat Plaintiff's gout or arthritis as "recommended."  (Etuk Opp. ¶ 5.)  Etuk provided this inadequate care "in a retaliatory agreement with defendant Walker."  (*Id.* ¶ 10.)  And as a result of this inadequate care, NYSDOCCS doctors eventually told Plaintiff that he also required surgery because of the spreading infection and for "untreated arthritis and gout."  (*Id.* ¶¶ 4, 7.)

**C.  Meals**

Regarding his diet, Plaintiff first alleges that AMKC dietitian Clara Talusan deprived him of "fish allergy meals" in retaliation for Plaintiff's grievances and for his "Muslim identity."  (SAC ¶ 33; NYC Opp. ¶ 12 & Ex. E.)  Exhibits submitted with Plaintiff's opposition demonstrate that he was diagnosed with a fish allergy.  (NYC Opp. Ex. E.)

Plaintiff also alleges that he was deprived of "medically prescribed" low-sodium meals.  Low-sodium meals were necessary due to Plaintiff's high blood pressure and high cholesterol.  (SAC ¶ 35; NYC Opp. ¶ 12.)  According to Plaintiff, Shawn Jones, the MDC dietitian, told Plaintiff that he could not receive a low-sodium diet "unless he change[d] his 'religion from Muslim to other.'"  (SAC ¶ 35.)  When he did not, Plaintiff was removed from the NYCDOC program for low-sodium meals.  (NYC Opp. ¶ 12.)  Plaintiff filed grievances on September 7, 2010, and September 15, 2010 requesting low-sodium, Halal meals.  (SAC ¶ 35.)  In response, MDC Inmate Grievance Program Supervisor Sean Brown informed Plaintiff on September 17 that this was a "non-grievable issue."  (*Id.*)  And because he was denied these meals, Plaintiff suffered even higher blood pressure and additional problems due to high cholesterol.  (NYC Opp. ¶ 12.)

### D.  Destruction of Property

Plaintiff further alleges that certain Defendants illegally destroyed his property on two separate occasions.  First, Plaintiff asserts that Yvette Bowers, the AMKC grievance officer, ordered a prison search team to destroy Plaintiff's blood pressure, blood thinning, and glaucoma medication.  (SAC ¶ 38; NYC Opp. ¶ 13.)  He filed a grievance about the incident on March 15, 2010.  But Rosamund Padmore, the AMKC inmate grievance coordinator, determined that the issue was "non-grievable."  (SAC ¶ 38.)  As a result of not taking his medication, Plaintiff developed a blood clot in his chest and was rushed to Elmhurst Hospital Center on March 23, 2010.  (*Id.* ¶ 40.)  Plaintiff alleges that Bowers destroyed his medication and no one responded to his grievances in retaliation for his prior complaints against Bowers and Padmore.  (*Id.* ¶ 39.)

And on August 30, 2011, Plaintiff claims that Rutherford Cipio, an MDC plumber, entered Plaintiff's cell and flushed the toilet several times.  This resulted in flooding Plaintiff's cell with human waste.  This flood destroyed Plaintiff's court documents and magazines.  (*Id.* ¶ 44.) According to Plaintiff, Cipio flooded his cell because Plaintiff had complained to Thomas Hall, the AMKC warden, about the lack of running water in the cells.  (*Id.*)  According to Plaintiff, Cipio wanted to prevent Plaintiff from accessing the courts.  (NYC Opp. ¶ 14.) Plaintiff alleges that the destruction of his documents "caused injury to his timely appeal."  (*Id.*)

### E.  Strip Searches

Next, Plaintiff alleges that Webb ordered a strip search of Plaintiff in her presence on six separate occasions in August 2011.  (SAC ¶ 42.)  Colon and Hall were also present during these strip searches.  (NYC Opp. ¶ 15.)  Webb ordered the strip searches because of Plaintiff's prior complaints, despite Webb's knowledge that Plaintiff's religious beliefs prohibit women from seeing him naked.  (Houston Aff. ¶ 8.)  Plaintiff also alleges that Agro ordered "numerous retaliatory strip searches" against him sometime after December 20, 2011.  (SAC ¶ 46.)

### F.  Finger Injury

Plaintiff also alleges a constitutional violation from the care he received after "smash[ing]" his right finger in a sink door on September 11, 2011.  (SAC ¶ 47.)  Plaintiff "was rushed to the MDC clinic" because of "swelling, substantial pain, redness and blood clot." (*Id.*) At the clinic, Geoffrey Ferrucci, an MDC physician's assistant, did not order an x-ray or otherwise adequately examine Plaintiff's finger to determine whether it was broken.  (*Id.*; NYC

Opp. ¶ 16.)  Because of this inadequate treatment, Plaintiff alleges that "half of the finger nail" fell off, resulting in "extreme pain[]" and the inability to use his finger.  (NYC Opp. ¶ 16.)

### G. Commissary Purchases

Next, Plaintiff alleges that NYCDOC Commissioner Dora B. Schriro, NYCDOC Assistant Commissioner Winette Halyard-Saunders, Colon, and the City of New York are "illegally imposing taxes" on his commissary purchases by raising prices "well above market value."  (SAC ¶ 50.)  Plaintiff claims that prison officials receive "kick backs" from vendors in exchange for these price increases. (*Id.*)  Affected commissary items include "life necessities" such as "foods, soaps, deodorant, toothpaste and lotions."  (*Id.* ¶ 63.)  And according to Plaintiff, the NYCDOC does not otherwise provide these basic personal hygiene items but instead sells them through the commissary.  (Houston Aff. ¶ 10.)

### H. Grievances

Plaintiff filed grievances, requests for hearings, and appeals regarding each of his claims.  Yet with the exception of the two grievances described above, Plaintiff alleges that prison officials ignored each of his filings as part of a citywide policy "to cover-up unconstitutional abuse of pretrial detainees and state prisoners."  (SAC ¶ 53.)  In furtherance of that policy, Brown, Agro, Padmore, Halyard-Saunders, NYCDOC Director Arthur Harris, Board of Correction Commissioner Richard Wolf, and AMKC Deputy Warden Danielle Johnson all ignored his complaints and appeals.  According to Plaintiff, this policy was the result of NYCDOC legal counsel's advice.  The policy's goal is to prevent prisoners from exhausting administrative remedies before filing federal lawsuits.  (NYC Opp. ¶ 18.)

## DISCUSSION

On these Rule 12(b)(6) motions, I must determine whether Plaintiff's complaint "state[s] a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 12(b)(6).  The court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (quoting *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir. 2003)).  And because Plaintiff is *pro se*, I construe his complaint liberally to raise the "strongest [claims] that [it] suggest[s]."  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (alterations in original) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)).  But while "detailed factual allegations" are not required, "[a] pleading that

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

**A.  Medical Claims**

I turn first to Plaintiff's claims of inadequate medical care.  To recover damages under § 1983, Plaintiff must have been the victim of conduct "by a person acting under color of state law" that "deprived [him] of rights, privileges or immunities secured by the Constitution or laws of the United States."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).  Here, Plaintiff complains that the medical and dental care he received was deliberately indifferent to his medical needs.  Whether styled as a Fourteenth or Eighth Amendment violation, I apply the same standard to Plaintiff's deliberate indifference claims.  *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009).

To establish deliberate indifference to his serious medical needs, Plaintiff must satisfy both an objective and a subjective component.  *Hill*, 657 F.3d at 122.  The objective component requires that Plaintiff show (1) his actual deprivation of adequate medical care and (2) that "the inadequacy in medical care is sufficiently serious."  *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006).  A prisoner is actually deprived of adequate medical care if prison officials fail to take "reasonable measures" in response to a medical condition.  *Id.* at 279 (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).  As to the second prong, different analyses apply depending whether the claim is for failure to provide any treatment as opposed to providing deficient treatment.  If the claim is failure to provide treatment, "courts examine whether the inmate's medical condition is sufficiently serious."  *Id.* at 280 (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)).  By contrast, where the inadequacy is in the medical treatment given, the seriousness inquiry focuses on "the particular risk of harm faced by the prisoner due to the challenged deprivation of care."  *Goris v. Breslin*, 402 F. App'x 582, 585 (2d Cir. 2010) (quoting *Smith*, 316 F.3d at 186).

As for the subjective component, Plaintiff must allege that the defendant acted with "a sufficiently culpable state of mind."  *Salahuddin*, 467 F.3d at 280 (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)).  Sufficient culpability "requires that the charged official act or fail to act while actually aware . . . that serious inmate harm [would] result."  *Id.* (citing *Farmer*, 511 U.S. at 836–37).

### 1. Dental Care

Applying these principles, I deny the City Defendants' motion to dismiss Plaintiff's dental claims. Plaintiff's allegations of extreme tooth pain, cavities, and an inability to eat properly coupled with Martin's refusal to provide immediate treatment are sufficiently serious to support a deliberate indifference claim. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (allegations of extreme pain, teeth deterioration, and inability to eat properly are sufficient on motion to dismiss). And construing the SAC's allegations in Plaintiff's favor as I must, this is not the time to resolve whether Martin's refusal to immediately treat Plaintiff was reasonable. *See, e.g.*, *Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 414 (S.D.N.Y. 2008) (denying motion to dismiss where defendants refused to perform surgery despite plaintiff's "extreme pain"). Accordingly, the SAC satisfies the objective component of his claim.

Similarly, Plaintiff also alleges a culpable state of mind. Martin could have immediately treated Plaintiff's dental injuries. Instead, Martin chose to refer Plaintiff to another doctor, one I might add not immediately available, leaving him in pain and unable to eat properly. These circumstances are enough to demonstrate Martin's culpability. *See Lloyd v. Lee*, 570 F. Supp. 2d 556, 569 (S.D.N.Y. 2008) (denying motion to dismiss where complaint "plausibly allege[d] that doctors knew that [the plaintiff] was experiencing extreme pain . . . [,] knew that the course of treatment they prescribed was ineffective, and declined to do anything to attempt to improve [the plaintiff's] situation"). Accordingly, Plaintiff's dental claims survive.

Plaintiff further alleges that Colon, Brown, Harris, Agro, Halyard-Saunders, and Wolf were informed of Plaintiff's dental needs through weekly counselor meetings and the grievance process. Plaintiff's claims that these defendants ignored Plaintiff's requests to see an oral surgeon despite Martin's recommendation also satisfy the subjective component as to those defendants. *See Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005) ("[A] deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians."). The City Defendants' motion to dismiss the dental claims is therefore denied.

### 2. Work Boots and Foot Doctor Referral

Similarly, Plaintiff's deliberate indifference claim regarding his foot injuries also survives. Plaintiff alleges that the standard prison footwear caused injuries that made it difficult

for Plaintiff to stand or walk.  Doctors then recommended that he wear work boots and see an outside podiatrist.  But these recommendations were not followed.  According to Plaintiff, he now requires surgery because of the lack of medical care.  These allegations state a sufficiently serious injury.  *See, e.g.*, *Giambalvo v. Sommer*, No. 10 Civ. 6774, 2012 WL 4471532, at *5 (S.D.N.Y. Sept. 19, 2012) (denying motion to dismiss where plaintiff "was actually prescribed a medical shoe by a specialist" and defendant "was deliberately indifferent to his receipt of this medical shoe").

Plaintiff has also satisfied the subjective component.  Here, Plaintiff alleges that Walker altered his medical records to indicate that Plaintiff did not need to see an outside podiatrist.  In doing so, Walker deliberately disregarded Plaintiff's foot injuries and suggests at least recklessness sufficient for a deliberate indifference claim.  And Plaintiff's allegations also demonstrate Agro's, Colon's, and Webb's recklessness where they ignored Plaintiff's direct complaints of his medical problems.  *See id.* at *6 (deliberate indifference shown where defendant "was aware of Plaintiff's requests for medical shoes and boots" yet did nothing).  The City Defendants' motion to dismiss Plaintiff's claims related to his foot injuries is therefore denied.

But I dismiss Plaintiff's claims that Walker's alteration of the medical records was part of a conspiracy with Webb, Colon, and Brown to retaliate against him.  Conspiracy claims under § 1983 require allegations showing "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999)).  Here, Plaintiff's allegations of an agreement are vague and conclusory.  Such allegations cannot support a conspiracy claim.  *See Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (affirming dismissal of conspiracy claims where *pro se* inmate alleged "no facts upon which it may be plausibly inferred that the defendants came to an agreement to violate his constitutional rights"); *K.W. ex rel. Brown v. City of N.Y.*, 275 F.R.D. 393, 399 (E.D.N.Y. 2011) (§ 1985 and § 1986 claims require more than "conclusory, vague or general allegations of conspiracy" to survive motion to dismiss).

### 3. Etuk's Treatment

Plaintiff has also sufficiently alleged deliberate indifference against Etuk.  Plaintiff asserts that Etuk intentionally cut him with a dirty, infected knife in the course of treating

8

Plaintiff's foot.  This conduct constitutes inadequate medical care provided with a culpable state of mind.  *See Chance*, 143 F.3d at 703 (conscious choice of "'an easier and less efficacious' treatment plan" supports a finding of culpable recklessness).  And as a result, Plaintiff asserts that he suffered an infection that spread to both his feet and legs.  He now requires surgery for this infection.  Plaintiff's deprivation was thus sufficiently serious to support a deliberate indifference claim.  *See Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003) ("[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of harm.").  Plaintiff's individual claims against Etuk thus survive.  But like his other conspiracy allegations, Plaintiff's conspiracy claims against Etuk are conclusory.  Therefore, I also dismiss the conspiracy claims against Etuk.

### 4. Finger Injury

Plaintiff also fails to allege deliberate indifference regarding his "smashed" finger.  According to Plaintiff, physician assistant Geoffrey Ferrucci denied him adequate medical treatment when he did not order x-rays to determine if Plaintiff had broken his finger.  Yet Plaintiff does not even claim that he in fact had broken his finger.  Instead, Plaintiff alleges only that part of his finger nail fell off, as well as swelling and substantial pain.  But these allegations are not sufficiently serious to support a deliberate indifference claim.  Even if Plaintiff had broken his finger, his injuries would not be sufficiently serious.  *Colon v. City of N.Y.*, No. 08 Civ. 3142, 2009 WL 1424169, at *6 (S.D.N.Y. May 21, 2009) ("Courts in this Circuit, as well as in other jurisdictions, consistently have found that a broken finger is not sufficiently serious as a matter of law.").  I therefore dismiss Plaintiff's finger injury claim.

### 5. Meals

I next consider Plaintiff's claim that he was denied low-sodium and "fish allergy meals" because he is Muslim.  The denial of a medically-prescribed diet may constitute an Eighth Amendment violation if that denial results in a sufficiently serious medical condition.  *See Rush v. Fischer*, No. 09 Civ. 9918, 2013 WL 542641, at *8 (S.D.N.Y. Feb. 14, 2013) (noting that "continued failure to provide . . . a medically appropriate diet, resulting in a decline in [inmate's] health" may violate Eighth Amendment (citing *Johnson v. Harris*, 479 F. Supp. 333, 336–37 (S.D.N.Y. 1979))); *Gaines v. Armor Health Care, Inc.*, No. 12 Civ. 4666, 2012 WL 5438931, at *5 (E.D.N.Y. Nov. 2, 2012).  But Plaintiff does not allege any consequences stemming from the

purported denial of fish allergy meals.  Therefore, he fails to state an Eighth Amendment claim due to that deprivation.

But Plaintiff has alleged an injury from his deprivation of low-sodium meals serious enough to support an Eighth Amendment claim.  *See Baskerville v. Blot*, 224 F. Supp. 2d 723, 735 (S.D.N.Y. 2002) (high blood pressure may be objectively serious medical condition).  And taking Plaintiff's allegations as true, he was denied low-sodium meals that would have ameliorated this condition because of his religion.  The choice to "follow his religious beliefs or to improve his conditions of confinement . . . is not meaningful, much less constitutional."  *Jolly v. Coughlin*, 76 F.3d 468, 481 (2d Cir. 1996).  Accordingly, Plaintiff's Eighth Amendment claim in relation to his deprivation of low-sodium meals survives.

And in addition to his Eighth Amendment claim, Plaintiff also alleges that the deprivation of low-sodium meals at the MDC violated the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  Claims under the First Amendment's Free Exercise Clause require that Plaintiff "show at the threshold that the disputed conduct substantially burden[ed] his sincerely held religious beliefs."  *Salahuddin*, 467 F.3d at 274–75.  Defendants then bear the "relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct."  *Id.* at 275.  And under RLUIPA, "a government shall not 'impose a substantial burden' on the 'religious exercise' of inmates . . . unless the government shows that the burden furthers a compelling governmental interest by the least restrictive means."  *Id.* at 273 (footnote omitted) (quoting 42 U.S.C. § 2000cc-1(a)).

Here, forcing Plaintiff to choose between his religion and his health imposed a substantial burden on the exercise of his religious beliefs.  *See Hamilton v. Smith*, 06 Civ. 805, 2009 WL 3199531, at *10–*13 (N.D.N.Y. Jan. 13, 2009) (denying summary judgment for failure to make available low-sodium and low-cholesterol Kosher meals).  And because Defendants have not met their resulting burden under either the First Amendment or RLUIPA, Plaintiff's claim survives.  *See, e.g.*, *Washington v. Chaboty*, No. 09 Civ. 9199, 2011 WL 102714, at *10 (S.D.N.Y. Jan. 10, 2011) ("The Second Circuit has cautioned that evaluation of penological interests is a fact-intensive inquiry that is not ordinarily amenable to resolution on a motion to dismiss." (citing *Shakur v. Selsky*, 391 F.3d 106, 115 (2d Cir. 2004))).  Accordingly, Plaintiff's religious claims survive.

### 6. Destruction of Medication

Similarly, the deliberate destruction of Plaintiff's medication on Bowers's orders is an actionable Eighth Amendment violation. Destroying prescribed medication risks serious harm and in fact resulted in Plaintiff being rushed to the hospital. While Plaintiff does not allege the specific date of destruction, a liberal reading of the complaint suggests that the destruction occurred around March 15, 2010, when Plaintiff filed his grievance. Given this colorable Eighth Amendment violation, Plaintiff's claim survives. *See Grullon v. City of New Haven*, No. 11-3184, 2013 WL 3023464, at *7 (2d Cir. June 19, 2013) ("[W]hen a *pro se* plaintiff brings a colorable claim against supervisory personnel, and those supervisory personnel respond with a dispositive motion grounded in the plaintiff's failure to identify the individuals who were personally involved, under circumstances in which the plaintiff would not be expected to have that knowledge, dismissal should not occur without an opportunity for additional discovery." (quoting *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998))).

But while Plaintiff states an Eighth Amendment claim, he does not state a First Amendment retaliation claim here. Plaintiff fails to adequately plead a causal relationship between the destruction of his medication and his protected speech. Indeed, he states only that this destruction of his medication was "[r]etaliatory." This is insufficient to survive a motion to dismiss. *See Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *17 (S.D.N.Y. Mar. 8, 2012) (dismissing claims because Plaintiff "fail[ed] to differentiate between his seemingly innumerable grievances or provide specific factual allegations, including but not limited to concrete dates, that might demonstrate any nexus between a specific grievance and a specific adverse action"). And as with Plaintiff's conspiracy claims related to his foot injuries, Plaintiff has not met his pleading burden regarding a conspiracy to destroy his medication.

## B. Claims Related to Cell Flooding

### 1. Due Process

I turn next to Plaintiff's claims regarding the intentional flooding of his cell and the subsequent loss of personal and legal documents. First, the destruction of these documents does not state a Fourteenth Amendment procedural due process claim. "The Fourteenth Amendment requires that 'No state shall . . . deprive any person of . . . property, without due process of law.'" *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (quoting U.S. Const. amend. XIV). But here, Plaintiff's allegations amount to nothing more than "random and unauthorized conduct" on the

11

part of state prison officials.  Such conduct does not give rise to a procedural due process claim "so long as [the state] provides [a] meaningful post-deprivation remedy."  *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (citing *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (2d Cir. 1996).  New York common law provides these adequate remedies.  *See, e.g.*, *Cantave v. N.Y.C. Police Officers*, No. 09 Civ. 2226, 2011 WL 1239895, at *7 (E.D.N.Y. Mar. 28, 2011) (observing that "state law causes of action for negligence, replevin, or conversion" are sufficient post-deprivation remedies (quoting *Dove v. City of N.Y.*, No. 99 Civ. 3020, 2000 WL 342682, at *3 (S.D.N.Y. Mar. 30, 2000)).  Accordingly, Plaintiff fails to state a procedural due process claim.

### 2. Access to the Courts

Plaintiff's allegations also do not support a claim for interference with his access to the courts.  To state a claim of interference with court access, Plaintiff "must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the plaintiff."  *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)).  Here, Plaintiff alleges only that the destruction of court documents delayed his appeal.  This is insufficient to support an access-to-court claim.  *See Deleon v. Doe*, 361 F.3d 93, 94 (2d Cir. 2004) (per curiam) (affirming dismissal where delay did not affect outcome of underlying case).  Nor does Plaintiff describe the nature of his appeal or show that his claim was not frivolous.  *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation.").  Plaintiff thus fails to state an access-to-court claim.

### 3. First Amendment Retaliation

But Plaintiff does state a claim for retaliation under the First Amendment.  "[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following:  '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"  *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004).  Here, Plaintiff asserts that his personal and legal documents were destroyed in retaliation for his "complaining . . . about no running water in cells for 48 hours."  This grievance is protected speech.  *See Varela v. Demmon*, 491 F. Supp. 2d 442, 452 (S.D.N.Y. 2007) (claim alleging retaliation for complaint about not

12

being permitted to shower survived motion to dismiss). And the destruction of Plaintiff's personal property and legal papers "suffice[s], at least for pleading purposes, to establish injuries . . . sufficiently serious to deter an inmate 'of ordinary firmness' from exercising his right to complain about staff misconduct." *Smith v. Maypes-Rhynders*, No. 07 Civ. 11241, 2009 WL 874439, at *5 (S.D.N.Y. Mar. 31, 2009). Accordingly, Plaintiff's claims for the destruction of his personal property and documents state a claim under the First Amendment.

### C. Strip Search Claims

Turning to Plaintiff's strip search claims, I first analyze those claims under the Fourth Amendment. "[A] strip search is unconstitutional if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006). Here, Plaintiff claims that he was strip searched six times within nine days in August. According to the complaint, these strip searches were performed in retaliation for Plaintiff's prior grievances, unsupported by any penological interest. Plaintiff thus states a claim for a Fourth Amendment violation. And for the same reason, Plaintiff also states free exercise and RLUIPA claims. *See id.* (where a Muslim prisoner "is not permitted to be seen naked by strangers" and no legitimate penological interest justified strip searches, First Amendment free exercise and RLUIPA claims survive).

But to the extent Plaintiff urges First Amendment retaliation regarding these strip searches, he fails to state a claim. Plaintiff asserts in conclusory fashion that Webb ordered the strip searches "in retaliation" for his "prior grievances and appeals" against her. But Plaintiff does not identify any of the grievances that purportedly motivated this retaliation. Accordingly, Plaintiff fails adequately to plead that protected speech caused his injury. *See Edwards*, 2012 WL 760172, at *17 (conclusory allegations do not demonstrate nexus between protected speech and adverse action).

### D. Commissary Pricing Claims

I also dismiss Plaintiff's allegations regarding commissary prices. Prisoners do not have a constitutional right to use a prison commissary. *Mitchell v. City of N.Y.*, No. 10 Civ. 4121, 2011 WL 1899718, at *2 (S.D.N.Y. May 13, 2011). Accordingly, "courts have repeatedly concluded that the prices and product selections offered by prison food vendors cannot give rise to a constitutional violation." *Id.* (citing *Davis v. Shaw*, No. 08 Civ. 364, 2009 WL 1490609, at *1 (S.D.N.Y. May 20, 2009)). And while Plaintiff points out that the commissary provides some

13

basic needs like toiletries and food, he never alleges that he was deprived of these items due to high commissary prices or that they were not otherwise provided to him. Accordingly, Plaintiff fails to state a constitutional claim.

### E. Grievance Policy Claims

Plaintiff also alleges that prison officials implemented a citywide policy "to cover-up unconstitutional abuse of pretrial detainees and state prisoners." (SAC ¶ 53.) As part of that policy, those officials systematically ignored Plaintiff's grievances. In most cases, these officials simply failed to respond. Ignoring grievances cannot support a First Amendment retaliation claim. *See Islam v. Goord*, No. 05 Civ. 7502, 2006 WL 2819651, at *6 (S.D.N.Y. Sept. 29, 2006) (prison official's failure to investigate prisoner's complaint is not sufficiently adverse to support First Amendment retaliation). Accordingly, Plaintiff's claims for failure to implement an effective grievance policy are dismissed.

### F. Defendants' Personal Involvement through Grievances

I next consider the City Defendants' argument that certain defendants cannot be liable for these constitutional violations for lack of personal involvement. Those defendants include Brown, Harris, Agro, Halyard-Saunders, Wolf, Schriro, Hall, Johnson, and Padmore. And indeed, supervisory liability under § 1983 requires that Plaintiff allege the personal involvement of these defendants in the underlying violations. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). But in *Colon v. Coughlin*, the Second Circuit held that personal involvement includes circumstances where "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong." 58 F.3d 865, 873 (2d Cir. 1995). And while there is some dispute as to the continued viability of this standard following the Supreme Court's decision in *Iqbal*, courts have also observed that "where the claim does not require a showing of discriminatory intent, the personal-involvement analysis set forth in *Colon* should still apply." *Hodge v. Sidorowicz*, No. 10 Civ. 428, 2011 WL 6778524, at *16 (S.D.N.Y. Dec. 20, 2011).

Here, Plaintiff alleges that Brown, Harris, Agro, Halyard-Saunders, and Wolf all received grievances, requests for hearings, or appeals regarding his constitutional claims for deprivation of adequate dental and foot care as well as his deprivation of low-sodium meals in violation of the First Amendment and RLUIPA. (SAC ¶¶ 17–18, 24–25, 31, 35–37.) Regarding the destruction of his medication, Plaintiff claims that Padmore, Harris, Johnson, Schriro, Halyard-Saunders, and Wolf received his complaints. (SAC ¶¶ 38–40.) Plaintiff also claims that Hall

received his complaints about inadequate foot care.  (SAC ¶ 31.)  And Plaintiff claims that Schriro received his complaints about his meals.  (SAC ¶ 36.)  Thus, all of these defendants had notice of these claims, yet according to Plaintiff failed to act.  And none of these claims require a showing of retaliatory or discriminatory intent.  Accordingly, even in light of *Iqbal*, it is inappropriate to dismiss Plaintiff's claims against these defendants at this stage for lack of personal involvement.  *See Grullon*, 2013 WL 3023464, at *5–*7 ("At the pleading stage, even if [Plaintiff] had no knowledge or information as to what became of his [grievance] after he sent it, he would be entitled to have the court draw the reasonable inference . . . that the [supervisor] in fact received the [grievance], read it, and thereby became aware of the alleged conditions of which [Plaintiff] complained.").

But the defendants to whom Plaintiff complained are not liable on claims requiring discriminatory or retaliatory intent where Plaintiff's sole allegation against them is that they failed to respond to his grievances.  Thus, Plaintiff's surviving First Amendment retaliation claim as to the flooding of his cell is dismissed as to the above defendants.  *See Rivera v. Lempke*, 810 F. Supp. 2d 572, 576 (W.D.N.Y. 2011) (noting that for "claims involving discriminatory or retaliatory intent, a claim premised on a supervisor's 'knowledge and acquiescence' in subordinates' wrongdoing is insufficiently stated" (quoting *Iqbal*, 556 U.S. at 677)).

Similarly, Plaintiff fails to allege that any defendants, outside of Webb, Hall, Colon, and Agro, caused his strip searches in violation of the Fourth Amendment.  Because his claims against the remaining defendants here also involve only their purported failure to respond to his grievances, I dismiss the strip search claims against the remaining defendants on this ground.  *See Turkmen v. Ashcroft*, 915 F. Supp. 2d 314, 356 (E.D.N.Y. 2013) (Fourth Amendment claims require plaintiff to plead that the "defendants' own actions caused the unreasonable strip searches alleged").

## G.  Failure-to-Train Claims

Finally, Plaintiff claims that all of these constitutional violations amount to a failure to train.  But Plaintiff relies solely on the fact that these violations occurred as the basis of this claim.  This is insufficient on a motion to dismiss.  *See Simms v. City of N.Y.*, No. 10 Civ. 3420, 2011 WL 4543051, at *2 (E.D.N.Y. Sept. 28, 2011) (dismissing *Monell* claim where complaint did not plead enough facts to show that "misconduct . . . was the result of anything other than the

individual acts of the arresting officers"); *see also Triano v. Town of Harrison, N.Y.*, 895 F. Supp. 2d 526, 540 (S.D.N.Y. 2012) (conclusory assertions of failure-to-train are insufficient on motion to dismiss).

## CONCLUSION

I have considered the parties' remaining arguments and find them meritless. For the reasons stated above, the City Defendants' motion to dismiss is GRANTED in part and DENIED in part. Etuk's motion to dismiss is GRANTED in part and DENIED in part. The Clerk of Court is instructed to close these motions (ECF Nos. 45 and 51) and remove them from my docket.

Finally, the Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Date: 8/20/13
New York, New York

HAROLD BAER, JR.
United States District Judge

16